IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBRA A. H.,**

        **Plaintiff,**

  v.                                            Civil Action 2:20-cv-5482
                                                 Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Debra A. H., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties in this matter consented the Undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 8, 9). For the reasons set forth below, the Commissioner's non-disability determination is **AFFIRMED** and this case is **DISMISSED**.

**I.    BACKGROUND**

Plaintiff protectively filed her applications for SSI and DIB on September 22, 2017, alleging that she became disabled on June 1, 2015. (Tr. 10, 240–41). She subsequently amended her applications and alleged a June 1, 2016, date of onset. (Tr. 242). Plaintiff's applications were denied initially (Tr. 91–106, 107–21) and on reconsideration (Tr. 124–38, 139–53). On October 17, 2019, a hearing was held before Administrative Law Judge Jeffrey Hartranft (the "ALJ") (Tr. 50–90), who issued an unfavorable determination on December 5, 2019 (Tr. 7–42). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final for purposes of judicial review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 19, 2020 (Doc. 1), and the Commissioner filed the administrative record on May 4, 2021 (Doc. 16). Plaintiff filed a Statement of Errors on August 18, 2021 (Doc. 23). Defendant filed an Opposition on September 28, 2021 (Doc. 25). Plaintiff did not file a Reply. Accordingly, the matter is ripe for review.

## II. THE ALJ's DECISION

The ALJ found that Plaintiff met the insured status requirement through December 31, 2021, and that she had not engaged in substantial gainful employment since her alleged onset date of June 1, 2016. (Tr. 12). The ALJ determined that Plaintiff had the following severe physical impairments: left knee and shoulder degenerative joint disease; seizure disorder; vestibular disorder; obesity; left lower extremity deep vein thrombosis ("DVP"); and right lower extremity superficial vein thrombosis ("SVT"). The ALJ, however, found that none of Plaintiff's severe physical impairments, either singly or in combination, meet or medically equaled a listed impairment. (Tr. 26). In addition, the ALJ determined that although Plaintiff experienced mental impairments and related symptoms, none of her mental impairments, individually or in combination, were severe. (Tr. 15).

The ALJ also assessed Plaintiff's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She must use a cane when walking, but can carry up to the exertional requirements of sedentary work with her other hand. She must be permitted to extend her left leg when sitting. Balancing, climbing ramps and stairs, crouching, and operation of foot controls with he left foot, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, crawl, kneel, reach overhead with the left arm, and engage in commercial driving, and must avoid all exposure to workplace hazards such as unprotected heights and machinery.

(Tr. 28).

After "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not sufficiently supported by the objective medical evidence and other evidence in the record." (Tr. 29).

The ALJ also discussed prior administrative findings about Plaintiff's physical impairments from state agency reviewing physicians and found that they were persuasive except for their finding that she was never able to operate controls with her left foot. (Tr. 31). Similarly, the ALJ discussed prior administrative findings from state agency reviewing psychologists and found that they were persuasive except to the extent they found that Plaintiff had moderate limitations in adapting and managing oneself. (Tr. 24).

Relying on a vocational expert's testimony, the ALJ concluded that Plaintiff was able to perform her past relevant work as a sale service supervisor. (Tr. 36). The ALJ therefore concluded that Plaintiff was not disabled as defined in the Social Security Act from June 1, 2016, through the date of the determination. (Tr. 38).

### III. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v.*

*Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## IV. DISCUSSION

Plaintiff alleges that the ALJ erred by failing to find that her depression was a severe impairment at step two of the sequential evaluation process and by failing to include any mental limitations in her RFC. (Doc. 23, at 10–13). Plaintiff's contentions of error lack merit.

### A. The ALJ's Step-Two Analysis

Plaintiff alleges that the ALJ erred at step two because she failed to find that Plaintiff's depression was a severe impairment. That allegation lacks merit.

At step two of the sequential evaluation, an ALJ considers the "medical severity" of a claimant's medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). When assessing the severity of a mental impairment, like depression, an ALJ must follow a special technique. 20 C.F.R. §404.1520(a); *Brooks v. Comm'r of Soc. Sec*. 531 F. App'x. 636, 641 (6th Cir. 2013.) Specifically, an ALJ must rate the degree of a claimant's functional limitation in four broad areas: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). An ALJ rates a claimant's degree of functional limitation in these four areas using a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. §

4

404.1520a(c)(4). If the degree of a claimant's limitations in these areas are rated as "'none' or 'mild,'" the ALJ will generally conclude that a claimant's mental impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities . . . ." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ rated Plaintiff's degree of limitation as mild in all four areas. Those ratings determinations were supported by substantial evidence. Accordingly, the ALJ did not err when determining that Plaintiff's depression was not severe.

        1.        Understanding, Remembering, or Applying Information

The ALJ rated Plaintiff's limitations as mild in the first area— the ability to understand, remember, or apply information. The ALJ explained that the record generally established that Plaintiff had no functional limitations in this area. (Tr. 17). But given occasional evidence that Plaintiff had an impaired knowledge fund, and extending Plaintiff the benefit of all doubt, the ALJ determined that she had mild limitations instead of no limitations. (Tr. 17, 15). The ALJ explained his reasoning in detail:

> The claimant completed high school by passing the general educational development test, endorses a history of regular classes, denies special education in school, and she reads, writes, speaks, and understands English (Exhibits 2F/2, 4, 6, 8, 10, 12, 14, 16, and 20, 6F/3, 12F/16 and 25, 1E/1 and 3, and 3E/8, and testimony). There is no evidence of impaired intellectual functioning as documented by intelligence quotient scores or school records. The claimant repeatedly demonstrated average and normal cognitive and intellectual functioning, and fund of knowledge (Exhibits 5F/40, 6F/4, 8F/4, 8, 13, 20, and 24, 10F/3 and 15, and 12F/59, 64, 70, 83, and 95). The claimant repeatedly had clear, coherent, fluent, intact, and normal comprehension, fluency, language, naming, and repeating, and no pressured or tangential speech (Exhibits 5F/6, 9, 13, 16, 18, 20, 22, 25, 30, 33, and 40, 8F/4, 8, 12, 20, and 24, 10F/3 and 15, and 12F/58, 64, 71, 83, and 95). The claimant had coherent speech with unremarkable quality, rhythm, and speed, at the February 2018 psychological consultative examination (Exhibit 6F/4). The claimant did not need simple and multistep directions and questions repeated at that time (Exhibit 6F/4). The claimant demonstrated average math skills with appropriate performance on serial seven exercise, and no comprehension problems, at that time (Exhibit 6F/4). As discussed below, the evidence documents that the

5

claimant frequently engages in activities that involve significant understanding, remembering, or applying information without appreciable or reported difficulties. The claimant repeatedly demonstrated normal insight and judgment (Exhibits 4F/15 and 23, 5F/9, 13, 16, 18, 20, 22, and 25, 8F/4, 8, 13, 20, and 24, 10F/3, 9, and 15, 11F/302, and 12F/5, 12, 64, 76, 83, and 95). The claimant denied needing help with performing her activities of daily living at the February 2018 psychological consultative examination (Exhibit 6F/4). The claimant is able to make basic decisions (Exhibit 6F/5). The claimant regularly performs grooming, hygiene, and personal care activities, with any alleged difficulties due to physical rather than mental impairments and related symptoms (Exhibits 6F/4 and 3E/3). The claimant repeatedly presented as kempt, with appropriate, normal, and unremarkable appearance, dress, grooming, and hygiene (Exhibits 2F/33, 6F/4, 8F/4, 7, 12, 19, and 24, 10F/3 and 15, 12F/58, 64, 76, 83, and 95). The claimant regularly consumes and prepares meals, and performs household chores and cleaning such as dusting and folding laundry (Exhibits 11F/28, 12F/92, and 3E/3-4). The claimant leaves her residence daily (Exhibit 3E/5). The claimant drives, walks, and receives rides from others to get to places she needs to go (Exhibits 6F/1 and 4, and 3E/5). The claimant endorsed regularly exercising at different times (Exhibit 2F/2, 4, 6, 8, 10, 12, 14, 16, and 20). The claimant reported recently joining a gym in May 2018 (Exhibit 10F/12). The claimant is able to take walks in her neighborhood (Exhibit 10F/6). The claimant reports engaging in strenuous activities such as pushing moving boxes (Exhibit 11F/97). The claimant sometimes attends church (Exhibit 10F/12). The claimant is able to shop in stores (Exhibit 6F/4), as well as by computer (Exhibit 3E/5). The claimant manages money, including counting change (Exhibits 6F/4-5 and 3E/5). The claimant is able to manage her daily schedule and medication, keep appointments, set alarms to remind her to attend to her grooming, and hygiene, and complete paperwork (Exhibits 6F/4 and 3E/4). The claimant is able to color in coloring books, solve crossword puzzles and word searches, read, and make crafts such as wooden signs (Exhibits 5F/14, 12F/80, and 3E/3, 6, and 8). The claimant reports creating photo albums for her family (Exhibit 10F/1). The claimant rides motorcycles, and she reported taking a cross-country motorcycle trip in June 2016 (Exhibits 8F/21 and 11F/323). The evidence documents extensive international travel, as the claimant went from the United States to Jordan and back twice since the alleged onset date of disability (Exhibit 12F/1, 28, 31, 56, 62, 80, and 92). The claimant is capable of using electronic mail and Facetime (Exhibits 12F/62 and 1E/1). The claimant is able to care for children, and she reported babysitting for a four-month old child in September 2018 (Exhibits 6F/4 and 11F/28). In this context, it is noteworthy that the claimant understood and followed the hearing proceedings closely and fully without any appreciable difficulties and responded to questions in an appropriate manner.

Additionally, Mitchell J. Norman, the impartial vocational expert, identified two of the claimant's past jobs as skilled, with Specific Vocational Preparation1 ("SVP") levels of SVP-5 and SVP-7. The claimant's history of performing skilled work activity that requires at least six months and up to four years to learn the techniques,

> acquire the information, and develop the facility needed for average job performance is inconsistent with any limitations in understanding, remembering, or applying information.
>
> The State Agency reviewing psychologists opined that the claimant has no limitations in understanding, remembering, or applying information (Exhibits 1A/9, 2A/8, 5A/7, and 6A/7). The consultative psychologist opined that in a work setting, the claimant would be able to understand, remember, and carry out simple and multistep instructions independently. These opinions are consistent with and supported by the totality of the evidence, as discussed above, which documents that the claimant has no limitations in understanding, remembering, or applying information. In light of the claimant's education, history of performing skilled work activity, average and normal cognitive and intellectual functioning, and fund of knowledge, demonstrated clear, coherent, fluent, intact, and normal comprehension, fluency, language, naming, and repeating, with no pressured or tangential speech, presentation at different times, and activities involving significant understanding, remembering, or applying information, as discussed above, there is no evidence that she has limitations in understanding, remembering, or applying information. However, in extending the benefit of all reasonable doubt, and in light of the claimant demonstrating impaired fund of knowledge at times (Exhibits 6F/4 and 8F/12), I find that she has mild rather than no limitations in understanding, remembering, or applying information.

(Tr. 15–17).

As this discussion illustrates, the ALJ determined that Plaintiff's limitations in this domain were mild for a multitude of reasons. Those reasons enjoy substantial record support. For instance, the ALJ accurately noted that Plaintiff's educational history was unremarkable— she completed high school by obtaining a GED. (Tr. 323, 325, 327, 329, 331, 333, 335, 337, 341, 450, 911, 920). And although Plaintiff had received C and D grades in school, she was never enrolled in special education classes. (Tr. 450). She could also read, write, speak, and understand English (Tr. 263, 409) and the record contained no standardized test scores documenting impaired intellectual functioning.

In his discussion, the ALJ also accurately explained that examinations regularly found that Plaintiff had no cognitive impairments. As the ALJ noted, during her consultative psychological examination, Plaintiff demonstrated average math skills with appropriate performance on a serial

7

seven exercise. (Tr. 451). Her thought processes were also logical during that examination; she did not need simple or multi-step directions/questions repeated; she had no comprehension issues; and she did not need the examiner to provide and additional explanations of words or phrases. (Tr. 451). Other examinations found that Plaintiff had average intelligence (Tr. 460, 464, 476, 469, 480, 506, 518, 954, 959, 971, 978, 990); logical thought processes (Tr. 460, 464, 476, 480, 506, 518, 953, 959, 971, 978, 990); clear speech (Tr. 460, 464, 468, 476, 480, 506, 518, 953, 959, 971, 978, 990); and that she had normal cognition (Tr. 460, 464, 476, 480, 506, 518, 959, 971, 978, 990), knowledge fund (Tr. 409), memory (Tr. 375, 399, 409), and speech comprehension (Tr. 375, 378, 382, 385, 387, 389, 391, 394, 399).

The ALJ further explained that the state agency reviewing psychologists found that Plaintiff had no impairments in this area. (Tr. 17). That accurately describes those experts' findings. (Tr. 99, 114, 130, 145). The ALJ also correctly noted that Plaintiff engaged in activities that involved understanding, remembering, and applying information. For example, Plaintiff indicated that she was able to shop (Tr. 279, 451); manage her money, medications, and daily schedule (Tr. 451); communicate with family via Facetime (Tr. 957); and care for or babysit young children (Tr. 451, 459, 504, 553). In short, the ALJ identified a variety of record-based reasons why Plaintiff's limitations were, at most, mild.

The ALJ noted that some of Plaintiff's past relevant work was skilled, and that such a work history was incompatible with limitations in understanding, remembering, or applying information. (Tr. 16–17). Plaintiff contends that it was error for the ALJ to rely on her past work as evidence of her present abilities. (Doc. 23, at 13). But after an examination of the ALJ's determination as a whole, it is clear that the ALJ did not exclusively, or even primarily, rely on Plaintiff's past work as a reason for rating her impairments as mild. Rather, it appears that the

8

ALJ described many record-based reasons for his rating determination and that his discussion of Plaintiff's past work history was merely part of a much broader discussion. Accordingly, the Court finds that the ALJ's discussion of Plaintiff's past work when finding that she only had mild limitations in understanding, remembering, or applying information does not constitute reversible error.

### 2. Interacting With Others

The ALJ also rated Plaintiff's limitations as mild in the second area— interacting with others. The ALJ explained that the record generally established that Plaintiff had no functional limitations in this area. (Tr. 18). But given Plaintiff's criminal legal history, and extending her the benefit of all doubt, the ALJ determined that she had mild limitations instead of no limitations. (Tr. 18–19, 17). The ALJ again explained his reasoning in detail:

> The claimant denies a history of firings due to inability to get along with others (Exhibit 3E/8). The claimant endorses history of good interaction with co-workers and supervisors (Exhibit 6F/3). The claimant repeatedly presented as calm, cooperative, euthymic, friendly, and pleasant, with appropriate, full, and normal affect, behavior, and mood (Exhibits 4F/8, 15, and 23, 5F/6, 9, 13, 16, 18, 20, 22, 25, 30, 33, and 40, 6F/4, 8F/4, 8, 12, 20, and 24, 9F/9, 10F/3, 9, and 15, 11F/10, 30, 32, 55, 74, 100, 147, 206, 208, 269, 302, and 326, 12F/5, 12, 19, 28, 35, 52, 58, 64, 76, and 83, and 14F/4). As discussed below, the evidence documents that the claimant frequently engages in activities that involve significant interacting with others without appreciable or reported difficulties. The claimant repeatedly demonstrated normal insight and judgment (Exhibits 4F/15 and 23, 5F/9, 13, 16, 18, 20, 22, and 25, 8F/4, 8, 13, 20, and 24, 10F/3, 9, and 15, 11F/302, and 12F/5, 12, 64, 76, 83, and 95). The claimant is capable of living with others (Exhibits 5F/11, 6F/1, 12F/16, 25, and 92, and 3E/2). The evidence contains references to the claimant having friends (Exhibits 12F/80 and 3E/6). The claimant regularly socializes with family and friends (Exhibits 6F/2, 8F/5, and 3E/6). The claimant endorses good relationships with her children (Exhibit 6F/1). The claimant leaves her residence daily (Exhibit 3E/5). The claimant drives, walks, and receives rides from others to get to places she needs to go (Exhibits 6F/1 and 4, and 3E/5). The claimant endorsed regularly exercising at different times (Exhibit 2F/2, 4, 6, 8, 10, 12, 14, 16, and 20). The claimant reported recently joining a gym in May 2018 (Exhibit 10F/12). The claimant is able to take walks in her neighborhood (Exhibit 10F/6). The claimant sometimes attends church (Exhibit 10F/12). The claimant is able to shop in stores (Exhibit 6F/4). The claimant reports creating photo albums

> for her family (Exhibit 10F/1). The claimant rides motorcycles, and she reported taking a cross-country motorcycle trip in June 2016 (Exhibits 8F/21 and 11F/323). The evidence documents extensive international travel, as the claimant went from the United States to Jordan and back twice since the alleged onset date of disability (Exhibit 12F/1, 28, 31, 56, 62, 80, and 92). The claimant is capable of using electronic mail and Facetime (Exhibits 12F/62 and 1E/1). The claimant is able to care for children, and she reported babysitting for a four-month old child in September 2018 (Exhibits 6F/4 and 11F/28). In this context, it is noteworthy that the claimant was socially appropriate at the hearing and in fact was quite polite and cooperative.
>
> The State Agency reviewing psychologists opined that the claimant has no limitations in interacting with others (Exhibits 1A/9, 2A/9, 5A/7, and 6A/7). The consultative psychologist opined that the claimant will not have issues dealing with co-workers and supervisors (Exhibit 6F/7). These opinions are consistent with and supported by the totality of the evidence, as discussed above, which documents that the claimant has no limitations in interacting with others. In light of the claimant's history of good interaction with co-workers and supervisors, presentation at different times, activities involving significant interaction with others, and absence of firings due to inability to get along with others, as discussed above, there is no evidence that she has limitations in interacting with others. However, in extending the benefit of all reasonable doubt, and in light of the claimant's criminal legal history (Exhibit 6F/3), I find that she has mild rather than no limitations in interacting with others.

(Tr. 18–19.)

As this discussion illustrates, the ALJ determined that Plaintiff's limitations in this domain were, at most, mild for numerous reasons. Those reasons enjoy substantial record support. For instance, the ALJ accurately noted that Plaintiff's history did not indicate that she had trouble interacting with others—Plaintiff denied that she had been fired for failing to get along with others (Tr. 282), and she described her past interactions with co-workers and supervisors as "good" (Tr. 450).

In his discussion, the ALJ also accurately explained that examinations regularly resulted in findings indicating that Plaintiff had no social interaction issues. During her consultative psychological examination, Plaintiff was calm and friendly. (Tr. 451). Other examinations noted that Plaintiff had a normal or appropriate mood or affect (Tr. 352, 359, 367, 375, 378, 382, 385,

10

387, 389, 391, 394, 399, 409, 491, 512, 576, 595, 621, 668, 727, 790, 823, 847, 900, 907, 914, 923, 930, 947, 1012); a euthymic mood (Tr. 480, 518, 953, 978); or a full affect (Tr. 460, 464, 476, 480, 518, 953, 959, 978). Plaintiff's manner was described as appropriate (Tr. 491) and her behavior was described as normal or appropriate (Tr. 409, 531, 576, 621, 727, 729, 790, 823). Providers also described Plaintiff as pleasant or very pleasant (Tr. 402, 553) and cooperative (Tr. 402, 464, 468, 506, 551).

The ALJ further explained that the state agency reviewing psychologists found that Plaintiff had no impairments in interacting with others. (Tr. 18). That accurately describes those experts' findings. (Tr. 99, 115, 130, 145). The ALJ also correctly noted that Plaintiff engaged in activities that that involved interacting with others. For example, Plaintiff lived at various times with other family members or her daughter and described her relationship at home as "good" (Tr. 380, 448, 911, 920, 987, 276); Plaintiff reported having acquaintances (Tr. 975) and good relations with her children (Tr. 448); and she described enjoying socializing with family and friends (Tr. 461). Plaintiff also indicated that her support system included multiple family members with whom she interacted daily. (Tr. 449). In short, the ALJ identified a variety of record-based reasons why Plaintiff's limitations in interacting with others were, at most, mild.

### 3. Concentrating, Persisting or Maintaining Pace

The ALJ next rated Plaintiff's limitations as mild in the third area—concentrating, persisting, or maintaining pace. The ALJ explained that the record generally established that Plaintiff had no functional limitations in this area. (Tr. 20). But given evidence of Plaintiff's responses to circumstantial stressors, and again extending her the benefit of all doubt, the ALJ determined that she had mild limitations instead of no limitations in this domain. (Tr. 19–20). The ALJ also explained his reasoning for this rating determination:

The claimant repeatedly presented as alert, awake, and oriented, with average, good, logical, and normal attention, eye contact, memory, and thought content and processes (Exhibits 4F/8, 15, and 23, 5F/6, 9, 13, 16, 18, 20, 22, 25, 30, 33, and 40, 6F/4, 8F/4, 7-8, 12, 20, and 24, 9F/9, 10F/3, 9, and 15, 11F/10, 30, 38, 54, 74, 84, 99-100, 147, 179, 192, 206, 208, 226, 240-241, 254, 268-269, 302, and 326, 12F/5, 19, 28, 35, 52, 58-59, 69, 64, 76, 83, and 95, and 14F/4). The claimant presented as alert, oriented, and responsive, with logical thought processes, unremarkable eye contact and memory, and no problems concentrating and remembering at the February 2018 psychological consultative examination (Exhibit 6F/4). The claimant accurately recalled five digits backward and forward, and two of three items after a delay, at that time (Exhibit 6F/4). As discussed below, the evidence documents that the claimant frequently engages in activities that involve significant concentrating, persisting, or maintaining pace without appreciable or reported difficulties. The claimant repeatedly demonstrated normal insight and judgment (Exhibits 4F/15 and 23, 5F/9, 13, 16, 18, 20, 22, and 25, 8F/4, 8, 13, 20, and 24, 10F/3, 9, and 15, 11F/302, and 12F/5, 12, 64, 76, 83, and 95). The claimant denied needing help with performing her activities of daily living at the February 2018 psychological consultative examination (Exhibit 6F/4). The claimant is able to make basic decisions (Exhibit 6F/5). The claimant regularly performs grooming, hygiene, and personal care activities, with any alleged difficulties due to physical rather than mental impairments and related symptoms (Exhibits 6F/4 and 3E/3). The claimant repeatedly presented as kempt, with appropriate, normal, and unremarkable appearance, dress, grooming, and hygiene (Exhibits 2F/33, 6F/4, 8F/4, 7, 12, 19, and 24, 10F/3 and 15, 12F/58, 64, 76, 83, and 95). The claimant regularly consumes and prepares meals, and performs household chores and cleaning such as dusting and folding laundry (Exhibits 11F/28, 12F/92, and 3E/3-4). The claimant leaves her residence daily (Exhibit 3E/5). The claimant drives, walks, and receives rides from others to get to places she needs to go (Exhibits 6F/1 and 4, and 3E/5). The claimant endorsed regularly exercising at different times (Exhibit 2F/2, 4, 6, 8, 10, 12, 14, 16, and 20). The claimant reported recently joining a gym in May 2018 (Exhibit 10F/12). The claimant is able to take walks in her neighborhood (Exhibit 10F/6). The claimant reports engaging in strenuous activities such as pushing moving boxes (Exhibit 11F/97). The claimant sometimes attends church (Exhibit 10F/12). The claimant is able to shop in stores (Exhibit 6F/4), as well as by computer (Exhibit 3E/5). The claimant manages money, including counting change (Exhibits 6F/4-5 and 3E/5). The claimant is able to manage her daily schedule and medication, keep appointments, set alarms to remind her to attend to her grooming, and hygiene, and complete paperwork (Exhibits 6F/4 and 3E/4). The claimant is able to color in coloring books, solve crossword puzzles and word searches, read, and make crafts such as wooden signs (Exhibits 5F/14, 12F/80, and 3E/3, 6, and 8). The claimant reports creating photo albums for her family (Exhibit 10F/1). The claimant rides motorcycles, and she reported taking a cross-country motorcycle trip in June 2016 (Exhibits 8F/21 and 11F/323). The evidence documents extensive international travel, as the claimant went from the United States to Jordan and back twice since the alleged onset date of disability (Exhibit 12F/1, 28, 31, 56, 62, 80, and 92). The claimant is capable of using

> electronic mail and Facetime (Exhibits 12F/62 and 1E/1). The claimant is able to care for children, and she reported babysitting for a four-month old child in September 2018 (Exhibits 6F/4 and 11F/28). In this context, it is noteworthy that the claimant understood and followed the hearing proceedings closely and fully without any appreciable difficulties and responded to questions in an appropriate manner. As noted above, Mr. Norman identified two of the claimant's past jobs as skilled, SVP-5 and SVP-7. The claimant's history of performing skilled work activity that requires at least six months and up to four years to learn the techniques, acquire the information, and develop the facility needed for average job performance is inconsistent with any limitations in concentrating, persisting, or maintaining pace.
>
> The State Agency reviewing psychologists opined that the claimant has mild limitations in concentrating, persisting, or maintaining pace (Exhibits 1A/9, 2A/9, 5A/7, and 6A/7). The consultative psychologist opined that in a work setting, the claimant would be able to maintain pace and persistence to carry out and remember simple and multistep instructions independently (Exhibit 6F/6-7). The consultative psychologist's opinions are more consistent with and supported by the totality of the evidence, as discussed above, which documents that the claimant has no limitations in concentrating, persisting, or maintaining pace. In light of the claimant's presentation at different times, and activities involving significant concentrating, persisting, or maintaining pace, as discussed above, there is no evidence that she has limitations in concentrating, persisting, or maintaining pace. However, in extending the benefit of all reasonable doubt, and in light of the claimant's presentation as circumstantial at times (Exhibit 8F/12), the State Agency assessments are persuasive in concentrating, persisting, or maintaining pace. Accordingly, I find that the claimant has mild rather than no limitations in concentrating, persisting, or maintaining pace.

(Tr. 19–20).

As this discussion illustrates, the ALJ determined that Plaintiff's limitations in this area were at most mild for a variety of reasons. Those reasons enjoy substantial record support. For example, the ALJ correctly explained that examinations routinely indicated that Plaintiff had no impairments in this area. During her consultative examination, Plaintiff reported concentration issues, but none were observed by the examiner. (Tr. 451). Other examinations routinely found Plaintiff was alert (Tr. 375, 399, 402, 595) or awake and alert (Tr. 378, 382, 385, 387, 389, 391, 394, 551). Plaintiff was also regularly found to be oriented (Tr. 375, 399, 402); oriented to person, place, and time (Tr. 409, 531, 575, 605, 620, 700, 713, 727, 797, 745, 761, 775, 789, 847); or

13

oriented to time, place, person, and situation (Tr. 352, 359, 367, 480, 512, 900, 914, 923, 930, 947, 990, 1012). Examinations also routinely found that Plaintiff had normal attention (Tr. 409) or "good" attention (Tr. 378, 382, 385, 387, 389, 391, 394).

The ALJ further explained that the state agency reviewing psychologists found that Plaintiff had only mild impairments in this area. (Tr. 20). That accurately describes those experts' findings. (Tr. 99, 114, 130, 145). The ALJ also correctly noted that Plaintiff engaged in activities that involved concentration, persistence, and maintaining pace. For example, Plaintiff rode motorcycles and reported taking a cross-country motorcycle trip. (Tr. 477, 844). Plaintiff also reported taking at least two international trips, one of which lasted several months. (Tr. 896, 926, 975). In short, the ALJ identified several record-based reasons why Plaintiff's limitations in this area were, at most, mild.

The ALJ noted that some of Plaintiff's past relevant work was skilled, and that such a work history was incompatible with limitations in concentration, persistence, and maintaining pace. (Tr. 20). Plaintiff contends that it was error for the ALJ to point to her past work as evidence of her present abilities. (Doc. 23, at 13). But it is once again clear that the ALJ did not exclusively, or even primarily, rely on Plaintiff's past work as a reason for finding she was only mildly impaired in this area—the ALJ described many record-based reasons for his rating and that Plaintiff's past work history was merely part of that broader discussion. Accordingly, the ALJ's discussion of Plaintiff's past work when determining that she only had mild limitations in this area does not constitute reversible error.

    4.  Adapting or Managing Oneself

In addition, the ALJ rated Plaintiff's limitations as mild in the fourth area—adapting and managing oneself. The ALJ explained that the record generally established that Plaintiff had no

14

functional limitations in this area. (Tr. 20). But given evidence of Plaintiff's responses to circumstantial stressors, and once again extending her the benefit of all doubt, the ALJ determined that Plaintiff had mild limitations instead of no limitations in this area. (Tr. 19–20). The ALJ again explained his reasoning in detail:

> The claimant repeatedly demonstrated normal insight and judgment (Exhibits 4F/15 and 23, 5F/9, 13, 16, 18, 20, 22, and 25, 8F/4, 8, 13, 20, and 24, 10F/3, 9, and 15, 11F/302, and 12F/5, 12, 64, 76, 83, and 95). The claimant denied needing help with performing her activities of daily living at the February 2018 psychological consultative examination (Exhibit 6F/4). The claimant is able to make basic decisions (Exhibit 6F/5). The claimant regularly performs grooming, hygiene, and personal care activities, with any alleged difficulties due to physical rather than mental impairments and related symptoms (Exhibits 6F/4 and 3E/3). The claimant repeatedly presented as kempt, with appropriate, normal, and unremarkable appearance, dress, grooming, and hygiene (Exhibits 2F/33, 6F/4, 8F/4, 7, 12, 19, and 24, 10F/3 and 15, 12F/58, 64, 76, 83, and 95). The claimant is capable of living with others (Exhibits 5F/11, 6F/1, 12F/16, 25, and 92, and 3E/2). The claimant regularly consumes and prepares meals, and performs household chores and cleaning such as dusting and folding laundry (Exhibits 11F/28, 12F/92, and 3E/3-4). The evidence contains references to the claimant having friends (Exhibits 12F/80 and 3E/6). The claimant regularly socializes with family and friends (Exhibits 6F/2, 8F/5, and 3E/6). The claimant endorses good relationships with her children (Exhibit 6F/1). The claimant leaves her residence daily (Exhibit 3E/5). The claimant drives, walks, and receives rides from others to get to places she needs to go (Exhibits 6F/1 and 4, and 3E/5). The claimant endorsed regularly exercising at different times (Exhibit 2F/2, 4, 6, 8, 10, 12, 14, 16, and 20). The claimant reported recently joining a gym in May 2018 (Exhibit 10F/12). The claimant is able to take walks in her neighborhood (Exhibit 10F/6). The claimant reports engaging in strenuous activities such as pushing moving boxes (Exhibit 11F/97). The claimant sometimes attends church (Exhibit 10F/12). The claimant is able to shop in stores (Exhibit 6F/4), as well as by computer (Exhibit 3E/5). The claimant manages money, including counting change (Exhibits 6F/4-5 and 3E/5).
>
> The claimant is able to manage her daily schedule and medication, keep appointments, set alarms to remind her to attend to her grooming, and hygiene, and complete paperwork (Exhibits 6F/4 and 3E/4). The claimant is able to color in coloring books, solve crossword puzzles and word searches, read, and make crafts such as wooden signs (Exhibits 5F/14, 12F/80, and 3E/3, 6, and 8). The claimant reports creating photo albums for her family (Exhibit 10F/1). The claimant rides motorcycles, and she reported taking a cross-country motorcycle trip in June 2016 (Exhibits 8F/21 and 11F/323). The evidence documents extensive international travel, as the claimant went from the United States to Jordan and back twice since the alleged onset date of disability (Exhibit 12F/1, 28, 31, 56, 62, 80, and 92). The

> claimant is capable of using electronic mail and Facetime (Exhibits 12F/62 and 1E/1). The claimant is able to care for children, and she reported babysitting for a four-month old child in September 2018 (Exhibits 6F/4 and 11F/28).
>
> The State Agency reviewing psychologists opined that the claimant has moderate limitations in adapting or managing oneself (Exhibits 1A/9, 2A/9, 5A/7, and 6A/7). The consultative psychologist opined that the claimant will not have issues dealing with work pressure (Exhibit 6F/7). The consultative psychologist's opinions are more consistent with and supported by the totality of the evidence, as discussed above, which documents that the claimant has a high level of adaptive functioning with no limitations in adapting or managing oneself. In light of the claimant's demonstrated normal insight and judgment, abilities for performing activities of daily living and making simple decisions, work activity babysitting, and significant interstate and international travel, as discussed above, there is no evidence she has limitations in adapting or managing oneself. However, in extending the benefit of all reasonable doubt, and in light of the claimant's presentation with impaired accountability at times (Exhibit 12F/59), I find that she has mild rather than no limitations in adapting or managing oneself.

(Tr. 20–21).

As this discussion illustrates, the ALJ determined that Plaintiff's limitations in this domain were mild for a multitude of reasons. Those reasons enjoy substantial record support. For instance, the ALJ accurately noted that examination findings indicated that she did not have impairments in this area. Examinations regularly revealed that Plaintiff had normal judgment (Tr. 469, 822); normal insight (Tr. 378, 382, 385, 387, 389, 391, 394); or normal insight and judgment (Tr. 359, 367, 460, 464, 476, 480, 506, 512, 518, 900, 907, 959, 971, 978, 990).

The ALJ also explained that Plaintiff routinely indicated that she maintained and managed her daily care. During her consultative psychological examination, Plaintiff indicated that she did not need help performing activities of daily living including washing up and showering, changing clothes, shopping for personal items, and managing money, medications, her daily schedule, and keeping appointments. (Tr. 451). Plaintiff also reported at that examination that she could manage her finances and make basic decisions. (Tr. 452). Her hygiene and grooming were also unremarkable during that examination, and she was dressed appropriately. (Tr. 451). Other

16

examiners also routinely noted that Plaintiff's presentation did not indicate that she was impaired in this area. Plaintiff was described by examiners as kempt (Tr. 402) and it was noted that her appearance was normal or within normal limits (Tr. 460, 463, 468, 475, 506, 518, 953, 959, 971, 978, 990). Plaintiff also reported that she exercised regularly. (Tr. 323, 325, 327, 329, 331, 333, 337, 341). In short, the ALJ identified several record-based reasons why Plaintiff's limitations in this area were, at most, mild.

Plaintiff notes that the state agency reviewing psychologists found that her limitations in this area were moderate instead of mild. Plaintiff additionally notes that the ALJ found that the state agency reviewers' findings were persuasive and further contends that the ALJ therefore erred by failing to also find that she had moderate limitations in this area or adequately explaining why he declined to do so. (Doc. 23, at 13–15). But the ALJ indeed explained why the reviewers' findings about Plaintiff's ability to adapt and manage oneself were not persuasive even though their other findings were. He wrote:

> The opinions of the State Agency reviewing psychologists are also persuasive in arriving at the determinations that the claimant's mental impairments and related symptoms are not severe individually or in combination within the meaning of the Regulations and she therefore has no mental functional limitations and restrictions as of the alleged onset date of disability (Exhibits 1A/9 and 12-13, 2A/8-9 and 12-13, 5A/7 and 11-12, and 6A/7 and 11-12). There is no evidence that the claimant has moderate limitations in adapting or managing oneself given her demonstrated normal insight and judgment, abilities for performing activities of daily living and making simple decisions, work activity babysitting, and significant interstate and international travel, as discussed above, and these opinions are unpersuasive to that extent.

(Tr. 24.)

That record-based explanation was adequate. The ALJ explained that the state agency reviewers' findings that Plaintiff had moderate limitations with regard to adapting and managing were undermined by record evidence including examination findings documenting that Plaintiff

17

had normal insight and judgment (Tr. 359, 367, 460, 464, 476, 480, 506, 512, 518, 900, 907, 959, 971, 978, 990), and activities of daily living including decision-making (Tr. 452), babysitting (Tr. 451, 459, 504, 553) and travel (Tr. 477, 844, 896, 926, 975). Plaintiff also notes that the ALJ wrote that "no acceptable medical source credibly opined that [the claimant] has mental functional limitations and restrictions as of the alleged onset date of disability" even though the state agency reviewers found that Plaintiff had moderate limitations in adapting and managing. (Doc. 23, at 13). But the ALJ explained that no source *credibly* found that Plaintiff had any limitations, and then provided record-based reasons for determining that the reviewers' findings were not persuasive (*i.e.*, not credible). Accordingly, the Court does not find that the ALJ erred.

### B. Substantial Evidence Supports the ALJ's Determination That Plaintiff Retained an RFC Without Mental Limitations

Relatedly, Plaintiff appears to allege that the ALJ's RFC determination was flawed because he failed to include any mental limitations in her RFC or consider her non-severe impairments when assessing her RFC. (Doc. 23, at 10–13, 15–18). But the ALJ considered and discussed Plaintiff's mental impairments and specifically determined that they did not result in any limitations or restriction at all. (Tr. 15, 21–22). The ALJ explained his reasoning for that determination as follows:

> There is no evidence of functional limitations and restrictions attributable to the claimant's mental impairments and related symptoms, which are stable, tolerable, and well controlled as of the alleged onset date of disability. The claimant had normal mental status examinations at different times (Exhibit 11F/9 and 301). The claimant endorsed inability to work solely due to physical impairments and related symptoms at the February 2018 psychological consultative examination (Exhibit 6F/3). The claimant repeatedly had personal health questionnaire responses reflecting no or only mild depression (Exhibits 4F/1, 3-4, 12, 14-15, and 22, 10F/6, 15, and 17, 12F/1, 5, 8, 11, 15, 20, 23, 31, 35, 49, and 56, and 14F/5). The claimant reported that prescribed treatment is effective in ameliorating her mental impairments and related symptoms (Exhibit 6F/2). The claimant denied a history of inpatient psychiatric hospitalizations (Exhibit 6F/2). This evidence does not reasonably justify the imposition of mental functional limitations and restrictions

18

> as of the alleged onset date of disability. Accordingly, there is no evidence that the claimant has mental functional limitations and restrictions as of the alleged onset date of disability.
>
> The record documents that the claimant's mental impairments and alleged symptoms are concurrent with situational stressors, including her child living overseas, as well as her child's illness (Exhibits 8F/1 and 12F/23). In light of this evidence, the possibility that the claimant's alleged mental symptoms are solely attributable to or chronically exacerbated by acute and chronic situational stressors rather than her mental impairments as of the alleged onset date of disability cannot be discounted. This evidence does not reasonably justify the imposition of mental functional limitations and restrictions as of the alleged onset date of disability. Accordingly, there is no evidence that the claimant has mental functional limitations and restrictions as of the alleged onset date of disability.

(Tr. 22).

The Court finds no error in this analysis. The ALJ explained that during her consultative psychological examination, Plaintiff indicated that she could not work because of her physical health problems. That accurately described information contained in the record. (Tr. 450). The ALJ also explained that Plaintiff's responses to health questionnaires indicated that her depression was not debilitating. Again, that reflects information in the record showing that although Plaintiff's depression scores sometimes indicated that she experienced depression (Tr. 460, 464, 476, 508, 910, 944, 960, 965, 967), her scores also regularly indicated no or only mild depression (Tr. 22, 345–46, 347, 356, 359, 518, 896, 900, 903, 907, 918, 923, 926, 930, 935, 947), and only mild anxiety (Tr. 520). The ALJ also explained that Plaintiff indicated that treatment ameliorated her mental health impairments and symptoms. And the record indeed reflects that Plaintiff indicated that her medications and counseling were helpful. (Tr. 449, 477). In addition, the ALJ accurately noted that Plaintiff did not report a history of psychiatric hospitalizations. (Tr. 449).

Last, the ALJ noted that Plaintiff's mental health impairments and symptoms appeared somewhat situational. The record reflects that Plaintiff reported that she was sometimes saddened

19

because she missed family who were distant, and that her depression could be aggravated by conflict or stress or other circumstances. (Tr. 461, 477, 504, 515, 957, 975).

In short, the ALJ identified several record-based reasons for declining to incorporate mental health limitations into Plaintiff's RFC. For that reason, he did not err by declining to include any such limitations into her RFC. Nor did he err by failing to consider them when assessing her RFC. Plaintiff's allegation lacks merit.

## IV. CONCLUSION

For all the foregoing reasons, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 23) and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date: February 4, 2022            /s/ Kimberly A. Jolson
                                  KIMBERLY A. JOLSON
                                  UNITED STATES MAGISTRATE JUDGE